COURT OF APPEALS
DECISION
DATED AND FILED

September 8, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP324**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2019ME97**

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF L. C. E.:

OUTAGAMIE COUNTY,

    PETITIONER-RESPONDENT,

 V.

L. C. E.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge.  *Reversed.*

¶1    HRUZ, J.[1]  Lauren[2] appeals from an order extending her involuntary commitment under WIS. STAT. ch. 51 and an order for involuntary medication and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

treatment. Lauren argues that the circuit court's ruling at her recommitment hearing failed to identify the subdivision paragraph(s) under WIS. STAT. § 51.20(1)(a)2. on which it based its dangerousness determination, in contravention of *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277. Lauren also challenges the sufficiency of the evidence establishing that she was currently dangerous under any of the standards set forth in § 51.20(1)(a)2. We agree that the court failed to make the specific findings mandated by *D.J.W.*, and we therefore reverse.

## BACKGROUND

¶2 Lauren was involuntarily committed pursuant to WIS. STAT. ch. 51 in April 2019, and she was subsequently recommitted in October of that year. On October 8, 2020, the circuit court held a hearing on Outagamie County's second petition for Lauren's recommitment.

¶3 Kim Luke, a community support specialist for Outagamie County who monitored Lauren's status during her WIS. STAT. ch. 51 commitments, submitted a letter to the circuit court recommending an extension of Lauren's commitment. Luke testified during the recommitment hearing that Lauren had been presenting symptoms of schizophrenia since her commitment in 2018, including being "psychotic, paranoid, believ[ing] that she's speaking to God" and "believ[ing] that people are out to hurt her." Luke further explained that as a result of Lauren's medication regimen, "her symptoms have really become manageable for her. She's no longer presenting with those types of symptoms due

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

to her pretty extensive medication." Luke testified that Lauren consistently states she will not continue taking her medication if her commitment is withdrawn, although Luke did state that Lauren had a legal guardian and that her residential staff monitors her medication. Luke also testified that without the medication, she believed Lauren would be prone to anger, have difficulty assessing her choices, and be unable to act clearly.

¶4      Relating to dangerousness, Luke testified that before Lauren began taking medication, Lauren had a "pretty lengthy history of criminal issues, including theft, disorderly conduct and battery," and that she believed without commitment Lauren would be a danger to herself or others. Luke concluded that if Lauren "were paranoid enough and psychotic enough she could believe that someone was trying to harm her who really wasn't and she would harm them in self[-]defense."

¶5      The other witness at the recommitment hearing was Lauren's treating psychiatrist, J.R. Musunuru. He testified that Lauren had originally been committed because she was "very confused and violent" and "had been complaining of hearing voices, seeing some visions at times," although Musunuru provided no specific details regarding any such violence. Musunuru concluded that Lauren had schizophrenia and noted that she had "extremely benefitted" from her medication. However, he testified that because Lauren "strongly believes" she does not have a mental illness, she constantly requests to be taken off of her medication. Because Lauren cannot understand her mental illness or make an informed decision regarding her medication options, Musunuru concluded that an involuntary medication order would be appropriate. Musunuru further concluded that Lauren can be a danger to herself or others as a result of her impaired judgment, as evidenced by her past dangerous behaviors.

¶6 Based on the testimony at the hearing, the circuit court concluded that Lauren had a mental illness, that there was a need for treatment, and that she lacked insight into her medication regimen. In discussing its findings, the court stated, in relevant part:

> Contemporaneous to this hearing there haven't been the incidents that have been previously described in the article—or in the file from the past hearing, including some of the criminal behavior towards others. There is also at least some history of behavior towards herself including jumping out of a window, I think it was second story, or approximately some—so there is the history of behaviors towards others and herself is not contemporaneous to this hearing, but historically it does still have relevance as the Court decides whether this should be an extension or not.[3]

While acknowledging that Lauren deserved "credit for the improvements she's made over time" and that "there's been progress," the court summarized its conclusions on dangerousness by stating: "If treatment were withdrawn, she would be a danger to herself or others manifested in part—in part from historic incidents, although not recent, at least recent enough to still have relevance in the Court's eyes."

¶7 The circuit court extended Lauren's commitment for a twelve-month period, and it entered an order for involuntary medication and treatment. Lauren now appeals.

---

[3] Lauren strongly disputes that she previously jumped out of a window, arguing that she never did so, and that no evidence was presented at the recommitment hearing to that effect. The statement of emergency detention and attached police reports filed in March 2019 before Lauren's initial commitment confirm that Lauren did not actually jump out of a window, but do state that Lauren had called 911 because of chest pains, and that she believed people were in her basement and wanted to hurt her. Additionally, these documents note that Lauren's mother and a crisis worker each attested to Lauren's attempt to jump out of a window earlier that night. None of these facts, however, were presented at the recommitment hearing. This discrepancy is ultimately not dispositive to the outcome of this case, however.

**DISCUSSION**

¶8      Lauren argues that the circuit court failed to adhere to the requirement established in **D.J.W.** that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." **D.J.W.**, 391 Wis. 2d 231, ¶40.  She argues the court failed to specify one or more of the subdivision paragraphs on which her recommitment was based, instead concluding only generally that she was "a danger to herself or others manifested in part—in part from historic incidents."

¶9      We agree that the circuit court failed to meet **D.J.W.**'s requirements because it did not specify the subdivision paragraph(s) on which Lauren's recommitment was based or make specific factual findings related to the applicable subdivision paragraph(s).    Following **D.J.W.**, our supreme court requires circuit courts to specify a subdivision paragraph in order to provide clarity and enhanced protection for patients.  **Id.**, ¶¶40, 42.  Indeed, the County admits that the court failed to make the specific findings required by **D.J.W.**, but it nevertheless argues that the court's findings were still supported by evidence.  Even if evidence was presented at the hearing that could have supported a dangerousness finding, that result does not modify the court's obligation—as mandated by our supreme court—to be specific as to the basis for its dangerousness determination.  The court in **D.J.W.** reasoned that this specificity would "clarify issues raised on appeal of recommitment orders and ensure the soundness of judicial decision making," as well as avoid the "guesswork" inherent in determining under which subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. a circuit court might have intended to make its findings without those specific references.  **See id.**, ¶¶44-45.

¶10    Regarding the proper relief in light of the circuit court's failure to make specific factual findings, Lauren requests that we vacate the orders to which she is subject.  Conversely, the County asks us to remand the case for a new hearing to allow the circuit court to make specific factual findings with reference to the appropriate subdivision paragraph(s) under WIS. STAT. § 51.20(1)(a)2. on which it bases its determination.  We conclude that reversal without remand is the appropriate remedy here.  Because the recommitment order was entered almost a year ago, Lauren has not been afforded the clarity and additional protections guaranteed by ***D.J.W.*** for that entire period, and remedying the violation now would be "far too late to be meaningful."  *See **Eau Claire Cnty. v. J.M.P.***, No. 2020AP2014-FT, unpublished slip op. ¶22 (WI App June 22, 2021).[4]  The remedy of reversal also ensures that Lauren is not deprived of her right to a meaningful appeal, as it would be almost impossible for Lauren to appeal from the results of a new hearing, if necessary, before her current recommitment order likely becomes moot.  *See **id.**,* ¶23.  Accordingly, we determine that reversal is the appropriate remedy even though the recommitment order at issue does not expire until early October 2021.  We therefore reverse Lauren's recommitment order and the corresponding order for involuntary treatment and medication.[5]

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

[5] Although Lauren also challenges the sufficiency of the evidence determining that she is dangerous, we need not address all issues raised by the parties when one is dispositive.  *See **Turner v. Taylor**,* 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716.  Additionally, we decline to address Lauren's preemptive mootness argument because we are releasing this opinion before Lauren's recommitment order expires or another extension is entered by the circuit court.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.